UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JOSEPH HENRY and MICHAEL MALINKY,

Plaintiffs,

- vs -

1:01-CV-1681

CHAMPLAIN ENTERPRISES, INC., d/b/a CommutAir; ANTHONY VON ELBE; JOHN ARTHUR SULLIVAN, JR.; ERNEST JAMES DROLLETTE; ANDREW PRICE; WILLIAM L. OWENS; CHAMPLAIN AIR, INC.; and U.S. TRUST COMPANY OF CALIFORNIA, N.A.,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|
| SHAYNE & GREENWALD CO., L.P.A.<br>Attorneys for Plaintiffs<br>221 South High Street<br>Columbus, Ohio 43215 | GARY D. GREENWALD, ESQ.<br>ANNE MARIE LA BUE, ESQ. |
| DeGRAFF, FOY, HOLT-HARRIS & KUNZ, LLP<br>Attorneys for Plaintiffs<br>90 State Street<br>Albany, New York 12207 | TERENCE J. DEVINE, ESQ. |
| BOND, SCHOENECK & KING, PLLC<br>Attorneys for Champlain Enterprises, Inc.; Champlain Air, Inc.; and all individual Defendants.<br>One Lincoln Center<br>Syracuse, New York 13202 | EDWARD R. CONAN, ESQ. |
| GROOM LAW GROUP CHARTERED<br>Attorneys for Defendant U.S. Trust Company of California, N.A.<br>1701 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20006 | EDWARD A. SCALLET, ESQ.<br>ROBERT P. GALLAGHER, ESQ.<br>LARS C. GOLUMBIC, ESQ. |

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. BACKGROUND

Plaintiffs Joseph Henry and Michael Malinky ("plaintiffs") brought this action alleging violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1104, 1105, 1106; seeking removal of fiduciaries under the equitable relief provision of ERISA, 29 U.S.C. § 1109(a); and state law claims of breach of fiduciary duty, unjust enrichment, and corporate waste and diversion of assets. The state law claims and breach of fiduciary duty claims against certain defendants were dismissed on October 27, 2003. Henry v. Champlain Enters., Inc., 288 F. Supp. 2d 202 (N.D.N.Y. 2003) ("*Henry I*").

A bench trial was held on several days in February and April 2004. Thereafter, Findings of Fact and Conclusions of Law were set forth in a Memorandum-Decision and Order entered on September 3, 2004, Henry v. Champlain Enters., Inc., 334 F. Supp. 2d 252 (N.D.N.Y. 2004) ("*Henry II*"), vacated, 445 F.3d 610 (2d Cir. 2006). On October 29, 2004, an order was issued, among other things awarding prejudgment interest, attorneys fees, and expenses, and directing the entry of judgment. Henry v. Champlain Enters., Inc., 342 F. Supp. 2d 122, 122 (N.D.N.Y. 2004) ("*Henry III*"). An appeal was taken by defendants Champlain Enterprises, Inc., d/b/a CommutAir ("CommutAir"); Anthony Von Elbe, John Arthur Sullivan, Jr.; Ernest James Drollette; and U.S. Trust Company of California, N.A. (collectively "U.S. Trust" or "defendant"). The United States Court of Appeals for the Second Circuit vacated the judgment and remanded the matter for further proceedings consistent with its opinion, which will be discussed in more detail below. Henry v. Champlain Enters., Inc., 445 F.3d 610 (2d Cir. 2006) ("*Henry IV*").

Familiarity with the previous decisions in this action is assumed. The factual background is set forth only so far as is necessary to resolution of the issues on remand.

This matter arose out of a disagreement regarding the valuation of CommutAir convertible preferred stock sold by the owners of CommutAir[1] to the Employee Stock Ownership Plan ("ESOP"), of which plaintiffs are participants. The stock purchase at issue took place pursuant to a Stock Purchase Agreement signed on March 15, 1994. Pursuant to that agreement, 540,000 shares of convertible preferred CommutAir stock was sold to the ESOP for $60,000,000.00. *Henry II*, 334 F. Supp. 2d at 267. The ESOP financed the $60 million purchase with a $9 million loan from CommutAir and three promissory notes payable by the ESOP to the owners/sellers, id., totaling $51 million.

It was determined after trial that the fair market value of the convertible preferred CommutAir stock was $52.25 million, rather than the $60 million paid by the ESOP. Id. at 268, 274. It was further determined that the stock sale transaction was a prohibited transaction under Section 406 of ERISA.[2] Id. at 269. Additionally, it was found that an exception,[3] which permitted the sale, in certain circumstances, of an employer's stock to an ESOP so long as the sale was for adequate consideration, did not apply. Id. at 272. Finally, it was concluded that the prohibited transaction caused $7.75 million in damages, and that amount was awarded to plaintiffs.

---

[1] CommutAir was a closely-held corporation owned by defendants Antony von Elbe, John Arthur Sullivan, Jr., and Ernest James Drollette. *Henry II*, 334 F. Supp. 2d at 256. Each owned a one-third share of the company. Id.

[2] Section 406 prohibits transactions involving the "sale or exchange . . . of any property between the plan and a party in interest," including purchase by the ESOP of security of the employer. 29 U.S.C. § 1106(a)(1)(A), (E).

[3] See 29 U.S.C. § 1108(e).

Upon motion by plaintiffs, prejudgment interest in the amount of $7,410,937.50 was awarded. *Henry III*, 342 F. Supp. 2d at 123. Plaintiffs were also awarded $552,807.61 in attorneys fees and expenses. Id. U.S. Trust's application for a set-off[4] was denied. Id. Accordingly, an amended judgment in favor of plaintiffs on behalf of the ESOP and against U.S. Trust in the sum of $15,713,745.11 was entered.

The only remaining claim was dismissed by stipulation on January 10, 2005. An amended judgment was entered reflecting this dismissal. Finality was achieved. U.S. Trust's motion to waive the posting of a supersedeas bond was denied. U.S. Trust appealed and plaintiffs cross-appealed.

The United States Court of Appeals for the Second Circuit rendered its opinion on April 26, 2006. *Henry IV*, 445 F.3d 610. The Second Circuit remanded the case so that specific errors in the valuation of CommutAir could be identified and for a determination of "whether a prudent fiduciary would have detected these errors under the circumstances prevailing at the time of the ESOP transaction." Id. at 621. Further, the Second Circuit

[4] The first basis upon which U.S. Trust asserted entitlement to a set-off was an alleged payment to the ESOP of $9 million plus interest in the form of 191,515.8932 shares of CommutAir common stock. Id. This payment, allegedly made in February 2004, took place as a result of an Internal Revenue Service ("IRS") finding that the convertible preferred CommutAir stock purchased by the ESOP had a value of only $51 million, although the purchase price was $60 million. Pursuant to Section 5.7 of the purchase agreement, based upon the IRS finding, the ESOP was entitled to reimbursement of the difference between the actual purchase price and the value as determined by the IRS. Plaintiff filed a breach of contract action, No. 1:04-CV-201, to enforce Section 5.7.

The second basis upon which U.S. Trust asserted entitlement to a set-off was to "cancel the $5,480,199 in principal and about $1,400,000 in interest due and owing on the Note from the ESOP to the" owners/sellers. Id. According to U.S. Trust, the cancellation of the Note would be accomplished by reinstating the owners/sellers as defendants in this case and ordering them to cancel the Note as part of the relief due to the ESOP. At that time the Note had not been cancelled; rather, U.S. Trust was seeking that as relief which would, in turn, entitle it to a set-off.

U.S. Trust's application for set-off was denied for lack of standing. Id. The breach of contract action was eventually dismissed. Henry v. vonElbe, No. 1:04-CV-201, slip op. at 12 (N.D.N.Y. Aug. 25, 2005).

directed that if defects are found "in the valuation report that a prudent fiduciary would have detected," the damages must be assessed and specific findings set forth. Id. at 622. Similarly, the award of prejudgment interest was vacated "to provide the district court with an opportunity to articulate its reasons for awarding prejudgment interest in the amount and for the period it did in this case." Id. at 623. Next, the appellate court found that U.S. Trust could not revive disgorgement claims that were abandoned by plaintiffs. Id.

Finally, U.S. Trust argued that any damages recovered by the ESOP would result in a windfall. The basis for this argument was that, as a result of an IRS audit, Section 5.7 of the purchase agreement was invoked and the owners/sellers made a stock payment to the ESOP to make up the difference between the $60 million sale price and the $51 million value determined by the IRS. Id. at 624; see also supra note 4. In response to this argument, the Second Circuit directed that if it is determined that there is an entitlement to damages, it must be explained how such damages are not a windfall to the ESOP. 445 F.3d at 624.

Following remand, as ordered, plaintiffs and U.S. Trust submitted amended Proposed Findings of Fact and Conclusions of Law ("Prop'd F. Fact & Concl. Law"). They each replied. The matter was taken on submission without oral argument.

## II. DISCUSSION

### A. Proposed Findings of Fact and Conclusions of Law

Plaintiffs proposed that a factual finding be made that the fair market value of the convertible preferred stock was $52,250,000.00 as of March 15, 1994. (Pls.' Prop'd F. Fact & Concl. Law ¶ 187.)

U.S. Trust noted that the previous award of damages assumed that shares worth $52.25 million were purchased by the ESOP for $60 million. (Def.'s Prop'd F. Fact & Concl.

Law ¶ 39.) The award of damages resulted from taking the difference between $60 million and $52.25 million, resulting in a determination that the ESOP was damaged in the amount of $7.75 million. Interest was then calculated on the $7.75 million damages award.

At the time the ESOP purchased the convertible preferred shares, it issued a note of $9 million to CommutAir and notes for a total of $51 million to the owners/sellers. Id. ¶ 43. At the time of the appeal, the ESOP owed approximately $5.5 million to the owners/sellers (having paid down $45.5 million on its debt) and the entire $9 million on the note to CommutAir for a total of $14.5 million. Id. ¶ 44. A new Stock Purchase Agreement ("Agreement") was entered into by CommutAir, the owners/sellers, and the ESOP[5] on February 28, 2006, two months before the remand.[6] Id. ¶ 45. Pursuant to the Agreement, CommutAir and the owners/sellers cancelled the ESOP notes ($9 million and $5.5 million, respectively). Id. Thus, the ESOP only paid $45.5 million for the preferred convertible stock that it now contends had a fair market value of $52.25 million. Id. ¶ 47.

Additionally, as a result of the IRS audit and Section 5.7 stock transfer, the ESOP did receive an additional 191,000 shares of common stock allegedly valued at $9 million, in an attempt to make up the difference between the IRS valuation of the convertible preferred stock of $51 million and the ESOP purchase price of $60 million. Id. ¶ 51.

**B. Analysis**

The ESOP paid the following for the convertible preferred CommutAir stock it purchased on March 15, 1994: $45.5 million to the owners/sellers ($51 million note

---

[5] The agreement was entered into by the ESOP's new trustee, La Salle National Bank, N.A., on behalf of the ESOP. For simplicity, it is referred to as the ESOP.

[6] Apparently the Second Circuit was never advised of this major development prior to issuing its decision.

cancelled after $45.5 million was paid). It had paid down none of the $9 million debt owed to CommutAir, therefore this makes no contribution to the amount paid for the stock. The three values, as of March 15, 1994, assigned to the convertible preferred CommutAir stock are $51 million according to the IRS audit, $52.25 million according to plaintiffs, and $60 million according to U.S. Trust. An alleged overpayment for stock by the ESOP (which would constitute the ESOP's damages) forms the basis for all of the causes of action. Thus, the worst-case scenario would be presented by the lowest value assigned to the stock.[7] In this case, that would require a comparison of the difference between the amount paid and the lowest assigned value. Here, that would be the $45.5 million actually paid compared with a $51 million value. The amount paid was well below that value; therefore, there was no overpayment. Consequently, any award of damages would constitute a windfall, which is prohibited by ERISA. See *Henry IV*, 445 F.3d at 624 (stating "The aim of ERISA is 'to make the plaintiffs whole, but not to give them a windfall'") (quoting Jones v. Furst UNUM Life Ins. Co. of Am., 223 F.3d 130, 139 (2d Cir. 2000)).

Plaintiffs argue that an interest overcharge would constitute an item of damages. However, this issue was decided on October 29, 2004, when plaintiffs' request for an interest overcharge was denied.[8] See *Henry III*, 342 F. Supp. 2d at 122. Additionally, the parties discuss a transfer of common stock to the ESOP that occurred as a result of an IRS audit. Given the fact that the ESOP suffered no damages from its purchase of the convertible

---

[7] For example, if values of $30 and $40 were suggested, when the ESOP paid $50, the worst case scenario would be presented using the $30 value. In this example, damages using the $30 value would be $20, but would only be $10 using the $40 value.

[8] Moreover, in view of the fact that the ESOP paid $6.75 million less than its proposed fair market value ($52.25 million minus $45.5 million), it is doubtful that any interest overcharge, even if allowed. would make up the difference.

preferred stock, any additional transfer of assets to the ESOP (which would serve to lower its damages) is irrelevant.

**III. CONCLUSION**

In summary, the plaintiffs as representation of the ESOP claim that they are entitled to an award of $7.75 million on the bases that it paid $60 million for the convertible preferred stock worth only $52.25 million. At the time of the *Henry II* and *Henry III* decisions, the ESOP still owed approximately $14.5 million on the purchase price. However, the situation has changed. As a result of the Agreement entered into by the ESOP, the $14.5 million previously due and owing has been canceled. The actual purchase price is now $45.5 million. The plaintiffs have been paid for any damages resulting from the initial overcharge. In fact, the plaintiffs may have received a bargain, paying only $45.5 million for convertible preferred stock worth at least $51 million (IRS) or $52.5 million (plaintiffs' calculation). This does not even take into consideration the 191,000 shares of common stock transferred to the ESOP at no cost.

The ESOP suffered no damages from its purchase of the convertible preferred stock because the amount paid was less than the stock's value. Since all of the causes of action have damages as an essential element, and no damages were incurred, all claims must be dismissed.

In view of the foregoing, it is not necessary to reach the preliminary matters identified by the Second Circuit. See *Henry IV*, 445 F.3d at 621-22. Specifically, because the ESOP sustained no damages regardless of the valuation determination, it is unnecessary to further identify the specific errors in the CommutAir valuation, the reasons that a fiduciary such as U.S. Trust should have in all prudence detected those errors, and why an award of

prejudgment interest, attorney fees and costs would be appropriate. All of those issues have been made moot by the Agreement of February 28, 2006.

Accordingly, it is ORDERED that all of plaintiffs' claims are DISMISSED and the complaint is DISMISSED in its entirety.

The Clerk is directed to enter judgment accordingly.

United States District Judge

Dated: January 5, 2007
Utica, New York.